UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In the matter:

Danielle Marie Stangel,            Case No. 17-20394-beh

    Debtor.                  Chapter 7

CoVantage Credit Union,

    Plaintiff,

v.                               Adv. Case No. 17-02132

Danielle Marie Stangel,

    Defendant.

**DECISION AND ORDER ON PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT**

Plaintiff CoVantage Credit Union filed a complaint seeking to except from discharge a debt resulting from the debtor's presentation of bad checks, relying on both 11 U.S.C §§ 523(a)(2)(A) and (a)(2)(B). The debtor did not respond to the complaint, so CoVantage moved for default judgment. Realizing that its two legal theories were inconsistent and mutually exclusive, CoVantage pursued judgment on only the claim under section 523(a)(2)(A). The Court held two prove-up hearings on the motion, at which counsel for CoVantage submitted supporting evidence.

After considering counsel's submissions and arguments, and the record in this case, the Court will grant the motion. Because the Court lacks sufficient evidence to determine the appropriate amount of the nondischargeable debt in one aspect, the Court will defer entering an order for judgment until CoVantage supplements the record with additional information.

## JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1334 and the Eastern District of Wisconsin's July 16, 1984, order of reference. CoVantage's request for a determination of the nondischargeability of its debt is a core proceeding under 28 U.S.C. § 157(b)(2)(I). CoVantage's request for the entry of a money judgment under Wisconsin state law is non-core, but the debtor's failure to appear and defend against the claim, despite proper service of the summons and complaint, constitutes knowing and voluntary consent to the Court's final adjudication of that request. *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S.Ct. 1932 (2015); *Kravitz v. Deacons (In re Advance Watch Co., Ltd.)*, 587 B.R. 598, 602 (Bankr. S.D.N.Y. 2018); *Campbell v. Carruthers (In re Campbell)*, 553 B.R. 448, 452–53 (Bankr. M.D. Ala. 2016).

## FACTS

CoVantage alleges that, between November 14 and November 15, 2016, the debtor-defendant Danielle Stangel made out four checks to herself, totaling $2,450, drawn on an Associated Bank account in her name. *See* CM-ECF Doc. No. 1, ¶¶ 5–8 and Exs. A–D. The debtor deposited these checks with CoVantage and then withdrew (most of) the funds shortly thereafter. *Id.* ¶ 9. The checks later were returned for insufficient funds. *Id.* ¶¶ 5–9. In late November 2016, CoVantage sent the debtor a demand letter for repayment of the overdrawn funds, in the amount of $2,405.25. *Id.* ¶ 10. The debtor never repaid, and the debt remains outstanding. *Id.*

At the prove-up hearings on CoVantage's motion for default judgment, CoVantage presented the affidavit of Kami Price, an agent of CoVantage. CM-ECF Doc. No. 18. The affidavit attaches four copies of returned checks from an Associated Bank account in Ms. Stangel's name, made out to Ms. Stangel, in amounts ranging from $250 to $850, issued between November 14 and November 15, 2016 (also attached as exhibits to the complaint).

Ms. Price avers that the debtor presented the checks to CoVantage on the following dates and times:

| Date/Time Presented | Amount | Disposition of funds |
|---|---|---|
| November 14, 2016 at 10:12 AM | $850 | $200 deposited<br>$650 cash given to debtor |
| November 14, 2016 at 11:13 AM | $250 | All $250 given to debtor |
| November 15, 2016 at 8:22 AM | $850 | All $850 given to debtor<br>Debtor also withdrew $150 |
| November 15, 2016 at 2:06 PM | $500 | All $500 given to debtor[1] |

CoVantage also presented the affidavit of Donna M. Woida, an employee of Associated Bank. CM-ECF Doc. No. 24. The affidavit attaches copies of financial records from Associated Bank, which show the following:

- An Associated Bank checking account was opened in Ms. Stangel's name around March 16, 2016, with a $3,000 deposit. *Id.* at 3.

- While open, the account had the following monthly ending balances (*see id.* at 4, 6, 8, 10 and 12):

    | Date | Account Balance |
    |---|---|
    | April 10, 2016 | $94.75 |
    | May 8, 2016 | $19.83 |
    | June 8, 2016 | -$501.61 |
    | July 10, 2016 | -$363.94 |
    | August 8, 2016 | $0 |

- The reason for the August 8 ending balance of $0 was that Associated Bank charged off $377.94 in principal and fees on August 5, essentially balancing out the account. *Id.* at 12. There has been no further activity in the account to date.

- The highest ending balance on any given date during the period the account was open was $2,380.13 on March 17, 2016. The balance fell below $1,000 on March 21, and, aside from an April 12 balance of $1,012.99 due to a $1,000 deposit that day, it remained below $1,000 until the account was closed. *See id.* at 5, 7, 9, 11 and 13. The last date the account had a positive balance was June 16, 2016. *Id.* at 11.

---

[1] This reflects a total amount deposited of $2,450, and a total amount withdrawn of $2,400.

- During the statement period of May 9 through June 8, 2016, the account incurred $217 in overdraft fees, and $35 in returned item fees. *Id.* at 9. During the statement period of June 9 through July 10, 2016, the account incurred $210 in overdraft fees, and $175 in returned item fees. *Id.* at 11. Two checks (for $325.92 and $35) also were returned during that period. During the statement period of July 11 through August 8, 2016, the account incurred $14 in overdraft fees, and $35 in returned item fees. *Id.* at 12.

- The debtor received what appear to be bi-weekly payroll deposits ("HEARTLAND EMPLOY DIR DEP") into her Associated Bank checking account in the following amounts on the following dates (*see id.* at 8 and 10):

  | Date | Deposit Amount |
  |---|---|
  | May 18, 2016 | $401.09 |
  | June 1, 2016 | $727.61 |
  | June 15, 2016 | $777.81 |
  | June 29, 2016 | $597.68 |

- An Associated Bank savings account was opened in Ms. Stangel's name around March 16, 2016, with a $1,000 deposit. *Id.* at 17.

- While open, the account had the following monthly ending balances (*see id.* at 19, 20, 22, and 24):

  | Date | Account Balance |
  |---|---|
  | March 31, 2019 | $101.01 |
  | April 30, 2016 | $1.01 |
  | May 31, 2016 | -$3.99 |
  | June 30, 2016 | -$8.99 |
  | July 31, 2016 | $0 |

- The savings account was closed on July 1, 2016 (an entry for July 1, 2016 states "Account Closure"). *Id.* at 24.

The financial statements from Associated Bank are undated, and counsel for CoVantage did not know when/if the debtor received the statements, or when/if the debtor learned that her account(s) had been closed. The statements list the debtor's address as N6967 Lake Crest Ln, Shawano, WI.

In its complaint, CoVantage claims that the debtor's actions caused it "direct loss and damage in the amount of $2,405.25." CM-ECF Doc. No. 1, ¶ 20. Citing to Wis. Stat. §§ 943.24 and 895.446, CoVantage seeks a money judgment of $7,500.90 as treble damages,[2] plus all accrued interest cost and actual reasonable attorney fees. *Id.* ¶ 21.

The schedules and other statements the debtor filed in her main bankruptcy case establish the following:

- The debtor's bankruptcy attorney was paid (by someone else, on Ms. Stangel's behalf) on July 22, 2016. *See* Case No. 17-20394-beh, CM-ECF Doc. No. 1, at 44.

- As of her January 20, 2017 bankruptcy filing, the debtor had been employed for four months as a CNA at Golden Living, with monthly take-home pay of $746.92 (and gross pay of $821.17). *Id.* at 35–36.

- The debtor's average gross monthly income for the six months before she filed her bankruptcy (July through December 2016) was $533. *Id.* at 47–48.

- Her petition lists her address as N6967 Lakecrest Lane, Shawano, WI.

## DISCUSSION

A defendant's default does not, standing alone, entitle the plaintiff to a default judgment. Federal Rule of Civil Procedure 55(b)(2), made applicable by Bankruptcy Rule 7055, grants the Court broad discretion to conduct hearings and receive evidence it deems proper before entering a default judgment. "Because of the impact of a nondischargeability action on the 'fresh start' arising from the entry of an order of discharge pursuant to 11 U.S.C. § 727(a), bankruptcy courts are particularly reluctant to 'rubber stamp' motions for default judgments in adversary proceedings filed to determine dischargeability of indebtedness . . . ." *MBNA America Bank, N.A. v. Hostetter (In re Hostetter)*, 320 B.R. 674, 679 (Bankr. N.D. Ind. 2005). Additionally, "[u]pon default, the well-pled allegations of the complaint relating to liability are taken as true, but

---

[2] It is unclear how CoVantage derived this figure. It is three times $2,500.30—a number that is not referenced in any of the plaintiff's filings or the documentary evidence.

those relating to the amount of damages suffered ordinarily are not." *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012). Damages must be proved "unless the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). In deciding whether CoVantage is entitled to a default judgment, the Court must determine whether CoVantage has proven a *prima facie* case of nondischargeability of its debt. *See Mega Marts, Inc. v. Trevisan (In re Trevisan)*, 300 B.R. 708, 713 (Bankr. E.D. Wis. 2003).

Section 523(a)(2)(A) provides, in relevant part: "A discharge under [Chapters 7, 11, 12, or 13] of this title does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). To except a debt from discharge under this section of the Code, a creditor must prove either: (1) the debtor made a deliberate misrepresentation or a deliberately misleading omission on which the creditor justifiably relied (in other words, the debt was fraudulently induced); or (2) the debtor perpetrated a "positive" fraud against the creditor, meaning an intentional fraud "involving moral turpitude." *See McClellan v. Cantrell*, 217 F.3d 890, 892, 94 (7th Cir. 2000) (reliance is necessary only when fraud takes the form of a misrepresentation); *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586–87 (2016) (Actual fraud "denotes any fraud that involv[es] moral turpitude or intentional wrong, [and] stands in contrast to implied fraud or fraud in law"; actual fraud encompasses fraudulent conveyance schemes, which "are not an inducement-based fraud.") (internal citations and quotation marks omitted); *Trevisan*, 300 B.R. at 718 ("Fraud, in the context of § 523(a)(2)(A), means 'positive fraud involving moral turpitude.'").

Because tendering an NSF check is not a false representation or a false pretense, *Williams v. U.S.,* 458 U.S. 279, 285–86 (1982); *In re Scarlata,* 979

F.2d 521, 525 (7th Cir. 1992), the proper inquiry here is whether the debtor's conduct constituted "actual fraud"—in other words, whether she had an actual, subjective intent not to repay CoVantage when she tendered (and cashed) the worthless checks. *See Trevisan*, 300 B.R. at 717 ("Even if proof of an actual misrepresentation is not necessary to find a debt nondischargeable, fraudulent intent on the debtor's part must be shown in order to establish the requisite fraud under § 523(a)."); *see also Capital One Bank v. Bungert (In re Bungert)*, 315 B.R. 735, 739 (Bankr. E.D. Wis. 2004) ("[A] credit card issuer may establish actual fraud for purposes of Section 523(a)(2)(A) by proving that the debtor's use of the card was made with an actual, subjective intent not to repay the issuer by discharging the debt in bankruptcy or otherwise.") (internal quotation marks omitted). Fraudulent intent rarely is proven directly, so it must be inferred from surrounding circumstances. *Trevisan,* 300 B.R. at 717.

In adversary proceedings alleging similar conduct—fraudulently incurred *credit card* debt—courts have looked to a set of twelve factors to determine whether the debtor had fraudulent intent, *i.e.*, whether the debtor intended to repay the credit card obligations at the time the credit card purchases were made. *See, e.g., Bungert,* 315 B.R. at 739–40. The same factors are applicable to "bad check" cases, by analogy. *E.g., Park Nat'l Bank & Trust of Chi. v. Paul (In re Paul)*, 266 B.R. 686, 694–95 (Bankr. N.D. Ill. 2001). So, to determine whether Ms. Stangel intended to defraud CoVantage at the time she tendered her NSF checks, the following factors are relevant:

1. The length of time between when the checks were issued and the bankruptcy filing;
2. Whether an attorney was consulted regarding bankruptcy before the checks were issued;
3. The number of checks issued while the account had a negative balance and the length of time between the issuance of the checks and the last deposit that gave the account a positive balance;
4. The amount of the checks;
5. The debtor's financial condition when the checks were issued;

6. Whether multiple checks were issued on the same day;
7. Whether the debtor was employed;
8. The debtor's prospects for employment;
9. Sudden changes in the debtor's banking activity; and
10. Whether the debtor used the money received from the checks to purchase luxuries or necessities.

*See id.* These factors are not exhaustive or determinative, and a plaintiff need not make a showing on each one before being entitled to a judgment on its claim.

In this case, the above factors weigh in favor of CoVantage's assertion that Ms. Stangel did not intend to repay her debt to CoVantage at the time she incurred it. Ms. Stangel issued the checks only two months before she filed her bankruptcy petition, and at least four months after retaining her bankruptcy attorney. All of the checks were issued at a time when Ms. Stangel's Associated Bank checking account had been closed for more than three months. While it is slightly troubling that the bank statements provided by CoVantage are undated, they are addressed to her at the same address she listed in her petition, and other evidence suggests that, at a minimum, Ms. Stangel knew she was using an account that lacked funds sufficient to cover the checks presented to CoVantage. The account last had a positive balance in June 2016. From early May until the account was closed, it incurred $441 in overdraft fees and $245 in returned item fees (for at least two returned checks). The total amount of the checks presented to CoVantage is more than three times Ms. Stangel's apparent monthly income at the time, and the checks were cashed within a 30-hour period. Also probative of Ms. Stangel's intent is her failure to respond to the plaintiff's November 29 demand letter, *see Hostetter*, 320 B.R. at 686 ("In the Court's view, this form of notification [sending a written notice of the dishonor of the check] *coupled with the complete failure of the debtor to respond either by any payment or any communication,* has some probative value with respect to intent.") (emphasis in original).

Some factors either are neutral, or tend to weigh against a finding of fraudulent intent. For example, the record does not contain any evidence about Ms. Stangel's prospects for higher-paying employment. Nor does it show whether she used the money received from the checks to purchase luxuries or necessities—but, the debts listed on Schedule E/F are primarily medical and do not suggest profligate credit card spending or otherwise hint at the purchase of "luxuries." Her personal property consists primarily of a car, a bunk bed, and a lamp. The record also is devoid of any information concerning whether the debtor's cashing of the checks with CoVantage reflected a sudden change in her banking activity. Although counsel for CoVantage stated in a March 2018 letter to the Court that Ms. Stangel's behavior was atypical, *see* CM-ECF Doc. No. 14 ("before these transactions, the Debtor hadn't used her CVCU account since March 2016, which she used exclusively for the purposes of having her tax returns [*sic*] automatically deposited"), no evidence was submitted to corroborate that assertion, and therefore the Court does not consider it.

On balance, however, the evidence establishes a *prima facie* case of nondischargeability. The timing of when Ms. Stangel cashed the checks, as well as her bankruptcy filing, suggest that she presented the checks when she knew they would be returned, and that she intended to file for bankruptcy and discharge the debt rather than repay it. This is sufficient to satisfy CoVantage's burden regarding Ms. Stangel's liability for nondischargeable damages. The same is not true, however, as to the *amount* of those damages.

Because CoVantage did not reduce its debt to judgment prior to the debtor's bankruptcy, the Court also must determine the amount of the nondischargeable debt. CoVantage's complaint suggests two different numbers for the "actual damages" it suffered as a result of Ms. Stangel's fraudulent conduct: $2,405.25, and $2,500.30 (a third of the requested treble damage amount). The evidence, however, shows that Ms. Stangel withdrew a total of $2,400 from the funds created by depositing the NSF checks. That is the amount of actual damages supported by the record, and on which the Court

will base the judgment. The Court will not speculate about what the additional $5.25 or $100.30 represent.

CoVantage also requests attorney fees and treble damages under Wis. Stat. § 895.446. This statute creates a civil cause of action for individuals harmed by conduct prohibited under Wis. Stat. § 943.24, which makes it a crime to issue a check "which, at the time of issuance, [the issuer] intends shall not be paid." Wis. Stat. § 943.24(1).[3] Based on the Court's determination of liability under 11 U.S.C. § 523(a)(2)(A) above, the debtor's conduct also would fall within the scope of Wis. Stat. § 943.24, enabling CoVantage to recover damages under Wis. Stat. § 895.446.

Section 895.446(3) allows a plaintiff to recover three different types of damages:

> (3) If the plaintiff prevails in a civil action under sub. (1), he or she may recover all of the following:
>
> > (a) Actual damages, including the retail or replacement value of damaged, used, or lost property, whichever is greater, for a violation of s. . . . 943.24 . . . .
> >
> > (b) All costs of investigation and litigation that were reasonably incurred, including the value of the time spent by any employee or agent of the victim.
> >
> > (c) Exemplary damages of not more than 3 times the amount awarded under par. (a). No additional proof is required under this section for an award of exemplary damages under this paragraph.

Wis. Stat. § 895.446(3).

Attorneys' fees are included within the meaning of "costs of investigation and litigation" under subsection (3)(b). *Estate of Miller v. Storey*, 2017 WI 99, 378 Wis. 2d 358, 384. At the second prove-up hearing, the Court requested

---

[3] *Prima facie* evidence of such intent includes "[p]roof that, at the time of issuance, the person did not have sufficient funds or credit with the drawee and that the person failed within 5 days after receiving written notice of nonpayment or dishonor to pay the check or other order, delivered by regular mail to either the person's last-known address or the address provided on the check or other order." Wis. Stat. § 943.24(3)(b).

that CoVantage's counsel file an affidavit of fees and costs to support an award under this subsection. Counsel has not done so, so the Court is unable to determine an appropriate amount of damages to award under subsection (3)(b).

Also at the second prove-up hearing, the Court requested that CoVantage submit legal authority detailing factors the Court should consider in exercising its discretion to award exemplary damages under subsection (3)(c), particularly in a default judgment setting. Counsel for CoVantage had argued at the hearing that an award of treble damages was mandatory once liability was established, but the Court read the statutory word "may" to imply discretion in whether to award damages under this subsection.

The letter-brief that counsel filed in response to the Court's request appears to misapprehend the Court's directive. Counsel frames the question as "whether an award of treble damages pursuant to Wis. Stat. § 895.446 is mandatory, or if the Court has discretion," and then asserts that treble damages are mandatory (once fraudulent intent has been established). In support, he quotes a sentence from a 2011 Wisconsin bankruptcy case: "To be **entitled** to treble damages [under Wis. Stat. § 943.20 and Wis. Stat. § 895.446(3)], [plaintiff] would need to establish that the defendant acted with an actual intent to defraud it." *In re Polus*, 455 B.R. 705, 710 (Bankr. W.D. Wis. 2011) (emphasis by counsel for CoVantage). But the court in *Polus* was not asked to determine whether exemplary damages under the Wisconsin statute were mandatory or discretionary—only whether the evidence in that case supported such an award (and it did not). Counsel reads too much into the court's use of the word "entitled," which does not equate to a finding of lack of discretion.[4]

Counsel then makes a statutory interpretation argument, relying on a 1987 Wisconsin appellate court case, *Ford Motor Co. v. Lyons*, 137 Wis. 2d 397, 447–48 (Ct. App. 1987) (which involved a different Wisconsin damages statute), to assert that the word "may" should not be read to afford judicial discretion in

---

[4] The court just as easily could have chosen the word "eligible" or "enabled" or "authorized."

awarding exemplary damages under Wis. Stat. § 895.446(3)(c). Unfortunately, this argument ignores the 2017 Wisconsin Supreme Court case cited above, *Estate of Miller v. Storey*, 378 Wis. 2d 358—the very same case counsel relied on in requesting an award of attorney fees under the statute. In *Estate of Miller*, the supreme court affirmed the appellate court's ruling that, in a jury trial, exemplary damages under Wis. Stat. § 895.446(3)(c) must be decided by the jury (the trier of fact), rather than the judge. *See* 378 Wis. 2d 358, 396 ("[A]lthough the judge initially determines whether exemplary damages are an appropriate issue to be presented to the trier of fact, it is within the discretion of the trier of fact to determine whether to actually award exemplary damages and, if so, in what amount."). Particularly noteworthy is the court's statement that a fact-finding *judge* possesses the same level of discretion afforded to a jury: "[I]n some instances, the judge is also the trier of fact and it would be appropriate in that instance for the judge to determine whether to award exemplary damages and the amount of the award." *Id.* at 396 n.33. *Estate of Miller* forecloses any argument that the Court lacks discretion in determining whether to award exemplary damages here.

But that still leaves the question of *how* the Court is to exercise its discretion in awarding damages. The Wisconsin Court of Appeals provided some guidance in *Stathus v. Horst*, 2003 WI App 28, 260 Wis. 2d 166. In *Stathus*, the court of appeals was asked to determine whether the trial court erroneously exercised its discretion in awarding treble damages under the prior version of section 895.446(3)(c), Wis. Stat. § 895.80(3)(a).[5] In reviewing the lower court's decision, the appellate court asked whether the trial court's ruling represented a reasonable conclusion, based on a reasonable examination of the facts:

> [W]hether to award treble damages under Wis. Stat. § 895.80(3)(a) (1999–2000), is a matter left to the discretion of the trial court. We will uphold that ruling as long as the trial court did not

---

[5] The language of the statute at the time provided: "(3) If the plaintiff prevails in a civil action under sub. (1) [including a civil cause of action based on s. 943.24], he or she may recover all of the following: (a) Treble damages." Wis. Stat. § 895.80(3)(a) (1999–2000).

> erroneously exercise its discretion, which requires a "reasonable
> inquiry and examination of the facts" to reach a reasonable
> conclusion.

*Stathus*, 260 Wis. 2d at 167. The appellate court concluded that the trial court properly exercised its discretion in awarding treble damages, reciting a number of facts in the record that supported the trial court's conclusion that the defendants' "willful concealment [of their leaky basement when selling their house] was of such a nature to warrant trebling the damages." *Id.* at 172–73.

Additionally, because "'[e]xemplary damages' are synonymous with 'punitive damages,'" *Estate of Miller*, 378 Wis. 2d at 396 n.32, it is appropriate to consider whether such damages are necessary here to serve the punitive purposes of punishment and deterrence. A motion for default judgment is not well-suited for this task. For example, in *Shopko Stores, Inc. v. Kujak*, the Wisconsin Court of Appeals considered whether it was appropriate to award exemplary damages under a similar statute, Wis. Stat. § 943.51(2),[6] on summary judgment. After first noting that the statute's use of the word "may" meant that "[e]xemplary damages are not mandatory," the court then concluded that a claim for exemplary damages "cannot be resolved in a principled fashion on summary judgment," pointing out several factors relevant to a court's determination on whether to award such damages:

> Because punitive or exemplary damages are analyzed by considering the nature of the wrongdoer's conduct, not the nature of the underlying tort, there is always the question of whether they shall be awarded at all.
>
> Thus, while proof of Kujak's retail theft is sufficient to subject her to exemplary damages, she may escape an award of such damages altogether if, in the judgment of the fact-finder, her offense does not warrant "the added sanction of a punitive damage to deter others from committing acts against human dignity." Jean

---

[6] The language of that statute provided: "(2) In addition to sub. (1), if the person who incurs the loss prevails, the judgment in the action may grant any of the following: (a) 1. Exemplary damages of not more than 3 times the amount under sub. (1)(a) and (b). 2. No additional proof is required for an award of exemplary damages under this paragraph." *See Shopko*, 147 Wis. 2d 589, 592 n.1 (Ct. App. 1988).

> Valjean, for example, if sued in a civil action under a statute such as sec. 943.51, Stats., might have escaped punitive damages for his theft of bread to feed his family.

*Shopko*, 147 Wis. 2d at 600–02 (internal citations omitted). Other factors regarding a defendant's conduct that "make trial of a punitive or exemplary damage claim by affidavit inappropriate" include "the seriousness of the hazard to the public, [and] the profitability and duration of the improper conduct," while mitigating factors include "the age of the offender; the attitude and conduct of the offender upon detection; fines and forfeitures already imposed; . . . or that the defendant is a person of modest means who will be severely punished by a relatively small amount of punitive damages." *Id.* at 602.

In sum, the case law is clear that exemplary damages under Wis. Stat. section 895.446(3)(c) are discretionary, and that the Court must make a reasonable inquiry and examination of the facts—including into circumstances like those listed above in *Shopko*—to determine whether exemplary damages are appropriate. The Court will exercise the discretion afforded by the statute in declining to award exemplary damages here. Where there has been no appearance by the debtor, and only a circumstantial showing of intent by default, the Court is reluctant to treble damages—particularly damages that the debtor will not be able to discharge—without knowing more about the debtor's circumstances and motivation at the time the debt was incurred. For example, was the debtor, like Jean Valjean, facing dire conditions that required incurring the debt—in a short or acute window of time—to pay for food or other necessities? Was CoVantage only one of many "victims" in a long-running scheme to defraud banks and credit unions, or did the debtor's presentation of NSF checks in November 2016 represent an isolated occurrence? The debtor's schedules do not suggest excessive credit card debt, and an award of treble damages would exceed nine months' worth of the debtor's take-home pay. CoVantage has presented no evidence of recidivism or anything that would otherwise suggest the debtor's conduct was so egregious to deserve punitive sanctions. Keeping in mind that bankruptcy courts routinely draw inferences

of intent in favor of a debtor's discharge, *In re Trevisan*, 300 B.R. at 717, the Court will not infer malicious motivation or reprehensible conduct on the debtor's part, without more.

## CONCLUSION

Based on the evidence submitted, the Court concludes that CoVantage has proven a *prima facie* case of "actual fraud" under 11 U.S.C. section 523(a)(2)(A), and that it has suffered actual damages of $2,400 as a result. For the reasons stated above, the Court will not treble those damages under Wis. Stat. section 895.446(3)(c). And while reasonably-incurred attorneys' fees are allowable under Wis. Stat. section 895.446(3)(b), the Court cannot determine the appropriate amount to award based on the record before it.

Accordingly,

The Court ORDERS that CoVantage's motion for default judgment is GRANTED.

IT IS FURTHER ORDERED that CoVantage shall have **14 days from the date of this order** to submit an affidavit of fees and costs that CoVantage seeks to recover under Wis. Stat. section 895.446(3)(b). In addition to including an itemization of counsel's time and the work performed, the affidavit must include sufficient information for the Court to ascertain (1) the amount of fees actually incurred; and (2) whether those fees are reasonable. *See Stathus*, 260 Wis. 2d at 178. ("The trial court needs to base the attorney's fees award on these two factors. That is, the award must be based on the attorney's fees that were actually incurred and that amount must be reasonable."). Such information should include, at a minimum, whether the retention agreement provides for a fixed or contingent fee, and any additional information relevant to the eight factors identified in *Stathus. See id.* at 174–75 (citing *Standard Theatres, Inc. v. State Dep't of Transp.,* 118 Wis.2d 730, 749–50 n. 9, 349 N.W.2d 661 (1984)).

If CoVantage fails to file an affidavit with the required information by the above deadline, the Court will enter a non-dischargeable judgment of $2,400, plus pre-judgment interest, under 11 U.S.C. section 523(a)(2)(A).

Dated: October 10, 2018

By the Court:

Beth E. Hanan
United States Bankruptcy Judge